ALICE B. COADY, Appellant, *against* LAWRENCE A. CURRY, Respondent.

(Decided April 1st, 1878.)

The payment to a marshal of money by a wife, the owner of property, to save it from a threatened seizure under an execution held by the marshal against her husband, is not a voluntary payment, and the wife can recover the money in an action against the marshal. The law is the same where the money is so paid in instalments at different times during the life of the execution and the continuance of the threats.

APPEAL by the plaintiff from a judgment in favor of defendant, rendered in a District Court of the city of New York. The facts appear in the opinion.

*Jeroloman & Arrowsmith*, for appellant.

*Joseph Steinert*, for respondent.

JOSEPH F. DALY, J.—This action was brought to recover

back $194 50 paid to defendant, a marshal, by plaintiff, to save her property at 396 Third Avenue from seizure and removal by defendant, who levied on it under an execution against her husband. From the careful opinion in writing attached to the return by Justice Gedney, who tried this cause, it is manifest that he deemed the property levied on the property of the judgment-debtor, the plaintiff's husband, and that he regarded plaintiff's claim that she carried on the butcher business through the agency of her husband a mere pretence, and that the arrangement between her and him, by which she advanced the money to buy goods, and he bought and sold them, was a scheme to baulk and hinder his creditors. The difficulty in the way of sustaining this finding in this case is, that the judgment creditors were not creditors of this particular business carried on at 396 Third Avenue, but of a former business carried on by the husband in Washington Market. These prior creditors could not be hindered, delayed or defrauded by a subsequent arrangement between their debtor and his wife, by which she furnished capital for a business to be carried on by him for her benefit. Persons who furnished goods to the new business would, of course, have their remedy against her, could get judgment against her as the person actually carrying on the business, and levy on the stock as hers; but former creditors of the husband, in order to justify a levy on such stock, must show that it belonged to the husband, *i.e.*, was bought by him with *his own* money, or was given to him by his wife. This is not the case of a transfer by the husband of his goods to his wife, and subsequently carrying on the business in her name to cheat his creditors. The uncontradicted evidence shows that the wife took the money from her own bank account and gave it to her husband to open this new business in her own name. This was a perfectly proper transaction, although always open to suspicion. Suspicion, however, avails nothing against proof. A man who has failed in business may open and carry on a like business for his wife, or for any person who chooses to risk money and credit on his ability and sagacity.

The payment by plaintiff to the marshal to save her property from wrongful seizure was not a voluntary payment, and she can recover it back. (*Atlee* v. *Backhouse*, 3 Mees. & W. 650; *Harmony* v. *Bingham*, 12 N. Y. 109; *Scholey* v. *Mumford*, 60 N. Y. 498.)   I do not regard it as altering the case, that the sum obtained by the marshal from plaintiff was paid at different times; every time the officer appeared to demand it there was a virtual renewal of the threat made at the first visit; it was not necessary that he should express over and over again an intention to remove the goods: he came in virtue of his execution for that purpose and no other. Nor was plaintiff bound to use diligence between the payments to take the goods out of the marshal's constructive custody by legal process.

The point appears to have been made by defendant on the trial, that at least a part of the money claimed in this action was paid by the judgment debtor, and not by his wife; but the judgment was not rendered on that ground, and it does not appear that any part of the money paid belonged to the husband.   Although the marshal's testimony would go to show that the husband paid two instalments of the money, *i.e.*, the first and third, and that the plaintiff not only did not pay on those occasions, but did not protest on any occasion, yet he admits in his testimony the following important facts:—At his first visit she claimed that the place was hers, and at the second visit she made objection when the receipt was made out in the husband's name, but the marshal said to her he had nothing to do with her at all, and that he did not recognize anybody but T. J. Coady (the husband) in this case; and, at the third payment the husband wished him to go up stairs and see the plaintiff, but the marshal declined because she was sick; and finally, at the time of the last payment, T. J. Coady said to the marshal, "Now, we are going to sue for this money," to which the marshal replied, "If you are, I hope you will commence suit before the payment of this money to the plaintiff," and Coady said, "Very good, we'll get our lawyer and commence the suit."   All this shows pretty clearly that the marshal knew there was not a volun-

tary payment, nor a payment by T. J. Coady, but a payment simply to prevent a seizure, and the giving of time to make the payments was with such knowledge and a full understanding of plaintiff's claims.

The judgment should be reversed.

CHARLES P. DALY, Ch. J., and VAN HOESEN. J., concurred.

Judgment reversed.